**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
ABDULKADIR SHARIF ALI,         )
                               )
           Petitioner,         )
                               )
     v.                        )     1:24CV547
                               )
LESLIE COOLEY-DISMUKES,        )
                               )
           Respondent.[1]      )
```

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). (Docket Entry 1.) Respondent thereafter submitted a filing entitled "Motion to Dismiss as Moot" ("Motion to Dismiss") (Docket Entry 5); see also Docket Entry 6 ("Supporting Brief")), Petitioner responded in opposition to Respondent's Motion to Dismiss (Docket Entries 10, 11), and Respondent replied (Docket Entry 12). For the reasons that follow, the Court should grant Respondent's Motion to Dismiss.

## I. Background

On August 8, 2014, a jury in the Superior Court of Guilford County found Petitioner (and his co-defendant) guilty of attempted robbery with a dangerous weapon, conspiracy to commit robbery with a dangerous weapon, assault with a deadly weapon inflicting serious

---

[1] "If the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody." Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts. In North Carolina, the Secretary of the North Carolina Department of Adult Correction ("NCDAC") "ha[s] control and custody of all prisoners serving sentence in the [s]tate prison system." N.C. Gen. Stat. § 148-4. Leslie Cooley-Dismukes, the current Secretary of the NCDAC, should substitute as Respondent in this action under Rule 25(d) of the Federal Rules of Civil Procedure.

injury, and first degree burglary in cases 13 CRS 100094, 100098, 10099, and 14 CRS 24118. See State v. Sheikh, No. COA-15-688, 786 S.E.2d 433 (table), 2016 WL 1744651, at *1 (N.C. App. May 3, 2016) (unpublished). The trial court sentenced Petitioner to three consecutive prison sentences of 59 to 83 months, 59 to 83 months, and 23 to 40 months. See id. at *2.[2]

A Disciplinary Hearing Officer ("DHO") at the Tabor Correctional Institution (where Petitioner then served his sentences for the underlying convictions described above) convicted Petitioner after a hearing of disciplinary offense "A-12" for "substance possession." (Docket Entry 1, ¶¶ 1-2, 5-7; see also Docket Entry 6-2 at 8-11.)[3] As a result of that conviction, the DHO sentenced Petitioner to 30 days in restrictive housing for disciplinary purposes ("RHDP") (see Docket Entry 1, ¶ 3; see also Docket Entry 6-2 at 8), the loss of 40 days of sentence reduction credits (see Docket Entry 1 at 18; see also Docket Entry 6-2 at 8), 50 hours of extra duty (see Docket Entry 6-2 at 8), a 90-day suspension of canteen, visitation, and telephone privileges (see

---

[2] The North Carolina Court of Appeals found no error in Petitioner's convictions and sentences, Sheikh, 2016 WL 1744651, at *2, the North Carolina Supreme Court denied Petitioner's petition for discretionary review ("PDR"), State v. Sheikh, 369 N.C. 39 (2016), and the United States Supreme Court denied Petitioner's petition for a writ of certiorari, Ali v. North Carolina, 580 U.S. 1166, 137 S. Ct. 1218 (Mem.) (2017). After the trial court denied Petitioner's Motion for Appropriate Relief collaterally challenging his convictions and sentences, this Court dismissed with prejudice Petitioner's action under 28 U.S.C. § 2254 attacking his underlying convictions and sentences without issuance of a certificate of appealability. See Ali v. Hooks, No. 17CV1034, 2018 WL 3421338, at *1 (M.D.N.C. July 13, 2018) (unpublished), recommendation adopted, slip op. (M.D.N.C. Sept. 4, 2018) (Biggs, J.).

[3] Throughout this Recommendation, pin citations to page numbers refer to the page numbers in the footer appended to these cited materials at the time of their docketing in the CM/ECF system.

-2-

id. at 9), and 60 days of limited withdrawal from his prison trust fund (see id.). Thereafter, prison officials denied Petitioner's appeal and upheld his disciplinary convictions and sentences. (See id., ¶ 9; see also id. at 19; Docket Entry 6-2 at 2-7.)

Petitioner subsequently submitted his instant Petition asking the Court to "overturn[]/vacate[]" his disciplinary conviction, "expunge[]" the conviction "from [his prison] record[,]" and order the "return of [the] 40 days [of lost] sentence reduction credits." (Docket Entry 1 at 18.)

## II. Ground for Relief

Petitioner alleges "Due Process [v]iolations elucidated [in paragraph] 9(f) [of his Petition]" (Docket Entry 1, ¶ 12 (Ground One) (stray period omitted)), in that the DHO "[d]eni[ed Petitioner] exculpatory evidence with respect to live witnesses, . . . denied camera footage that was of exculpatory value, [d]enied [Petitioner] an opportunity to hear and be heard, as well as . . . to be heard by a fair and impartial hearing officer[,] and [denied] staff assistance" (id., ¶ 9(f)); see also Docket Entry 1 at 5-7 (setting forth "[s]upporting facts" for Ground One)).

## III. Discussion

Respondent moves to dismiss the Petition on grounds of mootness, because "the North Carolina Department of Adult Correction [('NCDAC')] has chosen to restore to Petitioner the lost forty days of sentencing reduction credits at issue in this case." (Docket Entry 6 at 3 (hyphen omitted).) In support of that

-3-

argument, Respondent proffers the Affidavit of Joshua Panter, "the Director of Operations for the [NCDAC], Division of Prisons." (Docket Entry 6-3, ¶ 2.) In that Affidavit, Mr. Panter avers that, "[i]n order to avoid further litigation, [Prisons Administration] ha[s] determined to restore to [Petitioner] . . . the 40 days of earn time credits that were placed at issue in this matter as a result of [Petitioner's disciplinary] incident on [] 5 March 2024." (Id., ¶ 3.) Mr. Panter attached to his Affidavit "database print-out[s] that reflect[] that, on 26 August 2024, 40 days' time ha[d] been restored to [Petitioner] in order to restore the credits lost due to the A-12 violation that took place on 5 March 2024[.]" (Id., ¶ 4; see also Docket Entry 6-4 at 2-4 (database print-outs showing Petitioner's "SENTENCE CREDITS/PENALTIES" and "RELEASE DATE CALCULATION" before restoration of 40 days' sentencing reduction credits); Docket Entry 6-5 at 2-4 (database print-outs reflecting Petitioner's "SENTENCE CREDITS/PENALTIES" and "RELEASE DATE CALCULATION" after "VOID[ING]" loss of those 40 days)). As a result of the restoration of Petitioner's lost 40 days of sentencing reduction credits, Respondent contends that "federal habeas corpus relief is no longer available in this prison disciplinary case." (Docket Entry 6 at 3 (citing Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974), Rasul v. Buffaloe, No. 1:21CV311, Docket Entry 28 at 2 (M.D.N.C. Feb. 10, 2023) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Mar. 8, 2023) (Biggs, J.), and Holtz v. Richards, 779 F. Supp. 111, 113 (N.D. Ind. 1991)).)

"The doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction," Porter v. Clarke, 852 F.3d 358, 363 (4th Cir. 2017) (brackets omitted), which extends only to actual "Cases" and "Controversies," U.S. Const. art. III, § 2, cl. 1. In that regard, "[w]hen a case or controversy ceases to exist — either due to a change in the facts or the law — 'the litigation is moot, and the court's subject matter jurisdiction ceases to exist also.'" Id. (quoting South Carolina Coastal Conservation League v. U.S. Army Corps of Eng'rs, 789 F.3d 475, 482 (4th Cir. 2015)). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate," Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990), and "[t]he parties must continue to have a personal stake in the outcome of the lawsuit," id. at 478 (internal quotation marks omitted).

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for mootness. See CGM, LLC v. BellSouth Telecomm'ns, Inc., 664 F.3d 46, 52 (4th Cir. 2011). As Respondent "challenges the existence of subject matter jurisdiction in fact, [Petitioner] bears the burden of proving the truth of such facts by a preponderance of the evidence." U.S. ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009). In determining whether Petitioner has met that burden, the Court must "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg

-5-

& Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

Respondent's materials demonstrate that Petitioner has already obtained restoration of the 40 days' sentencing reduction credits he lost as a result of conviction of the A-12 offense on March 5, 2024. (See Docket Entry 1 at 18; see also Docket Entries 6-3, 6-4, 6-5.) Notwithstanding that restoration, Petitioner contests the mootness of his Petition on three grounds: 1) the "voluntary cessation exception" to mootness (Docket Entry 11 at 2), 2) "the capable of repetition[, yet evading review] doctrine" (id. at 3 (quotation marks, hyphens, and brackets omitted)), and 3) "collateral consequences . . . as [a] direct result of his [prison disciplinary] conviction" (id. at 6). For the reasons that follow, none of those grounds defeat Respondent's mootness arguments.

## A. Voluntary Cessation Exception to Mootness

Petitioner first argues that, pursuant to the voluntary cessation exception, "[m]ootness is established only if '(1) it can be said with assurance that "there is no reasonable expectation . . ." that the alleged violation will reoccur . . . and (2) interim relief or events have completely and irrovocably [sic] erradicated [sic] the effects of the alleged violation.'" (Id. at 2 (quoting County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (internal citations omitted) (in turn quoting United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953))).) According to Petitioner, "[he] know[s] for a fact that [he] will be subject to these same risks of having [his] due process rights violated by

-6-

[Respondent] - as it has been [his] unpleasant experience - being subjected to such, at many different facilities at different times throughout [his] incarceration." (Id. at 13; see also id. at 5 (contending that "[he] has demonstrated that he will indubitably be subject to these same risks in his Affidavit, given his experience in the custody of the NCDAC[,] and the copious litigation against the NCDAC fully reveal[s] the more than evident possibility of the action occurring again and again").)

As Respondent has argued, "Petitioner's 'voluntary cessation' argument is misplaced," because that exception to mootness "only potentially applies when a party to litigation voluntarily stops performing an <u>ongoing, illegal act</u> after litigation has begun." (Docket Entry 12 at 3 (emphasis added).) As Respondent points out, "the instant [P]etition did not challenge some <u>ongoing due process violation</u> which Respondent *could* voluntarily cease after commencement of [this] litigation" but, rather, "only alleged that Respondent violated <u>Petitioner's</u> due process rights <u>during the disciplinary investigation and hearing</u>" arising out of his A-12 <u>offense committed on March 5, 2024, "which concluded on 18 March 2024</u>." (Id. (citing Docket Entry 1 at 2, 8) (italics supplied by Respondent) (underscoring added).) Moreover, although Respondent voluntarily restored Petitioner's 40 days of lost sentence reduction credits, Petitioner did not challenge on due process (or other) grounds Respondent's <u>right to remove</u> those 40 days of credits as part of Petitioner's prison disciplinary sentence, much less allege that Respondent's <u>ongoing policy</u> of removing such

-7-

credits from other prisoners as a disciplinary sanction for certain offenses violated the U.S. Constitution in some way (see Docket Entries 1, 11).  In other words, Respondent has not voluntarily ceased any ongoing practice which Petitioner has challenged as unconstitutional and, thus, the voluntary cessation exception to mootness simply does not apply to Petitioner's case.  See Leonard v. Hammond, 804 F.2d 838, 842 (4th Cir. 1986) (recognizing only "[t]wo exceptions to the mootness doctrine" in Section 2254 cases: "(1) collateral consequences; and (2) capable of repetition, yet evading review" (internal quotation marks omitted)); Fields v. Warden of New Jersey State Prison, No. 13CV7693, 2016 WL 3041857, at *4 (D.N.J. May 26, 2016) (unpublished) ("[The p]etitioner's argument that 'the voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case' is inapplicable in a habeas proceeding [under Section 2254].").

**B.  Capable of Repetition, Yet Evading Review Doctrine**

Petitioner makes only passing reference to "[t]he capable of repetition[, yet evading review] doctrine" in his response in opposition to Respondent's instant Motion (Docket Entry 11 at 3 (internal quotation marks and hyphens omitted)), stating that "'[t]he . . . doctrine applies only in exceptional situations,' City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983), where a [p]laintiff can show that '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the

same complaining party would be subjected to the same action again[,]' Gulf of Maine Fisherman's Alliance v. Daley, 292 F.3d 84, 89 (1st Cir. 2002) (quoting Weinstein v. Bradford, 423 U.S. 147, 149 (1975) (per curiam))" (id. at 3-4 (parallel citations omitted)). Nevertheless, in view of Petitioner's pro se status and the United States Court of Appeals for the Fourth Circuit's ruling that the doctrine applies in the Section 2254 setting, see Leonard, 804 F.2d at 842, the undersigned will address whether the doctrine defeats Respondent's mootness argument.

Even assuming, arguendo, that Petitioner could show that the prison disciplinary process he challenged "was in its duration too short to be fully litigated prior to its cessation," Weinstein, 423 U.S. at 149, he cannot demonstrate that "there was a reasonable expectation that [he] would be subjected to the same [due process violations] again," id.  The Fourth Circuit has ruled that satisfaction of the "reasonable expectation" prong cannot depend on an assumption that the petitioner will commit bad acts in the future that would again subject him to the challenged conduct:

> [The petitioner] bears the burden of demonstrating that the [capable of repetition, yet evading review] exception applies, *see, e.g., Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006), and in this instance, it is a burden that he cannot carry.  Unless [the court is] to assume that [the petitioner] will flout [South Carolina Department of Corrections ("SCDC")] standards and codes of conduct in such a manner as to warrant reassignment to the [Maximum Security Unit ("MSU")], there is nothing in the record to support the proposition that he is likely to be subjected to the [challenged conduct] again in the future.  There is no evidence in the record that the SCDC arbitrarily places inmates in the MSU.  Instead, assignment to the MSU is directly tied to an inmate's bad behavior, so [the petitioner] thus "holds the keys" to his remaining free from the [MSU].

-9-

> <u>For [the court] to find the exception for cases "capable of repetition, yet evading review" applicable here, then, [the court] would have to forecast bad behavior on [the petitioner]'s part. [The court] surely cannot base [its] mootness jurisprudence in this context on the likelihood that an inmate will fail to follow prison rules.</u> Such "conjecture as to the likelihood of repetition has no place in the application of this exceptional and narrow grant of judicial power" to hear cases for which there is in fact a reasonable expectation of repetition. *Abdul-Akbar*[ *v. Watson*], 4 F.3d [195,] 207 [(3d Cir. 1993)]. There must be a "demonstrated probability" that the challenged action will recur again, and to the same complainant. *Murphy v. Hunt*, 455 U.S. 478, 483 (1982) (per curiam). Because [the petitioner] will only find himself in the MSU again if he bucks prison policy, and because <u>[the court] presume[s] that he will abide by those policies</u>, [the court] conclude[s] that the "capable of repetition, yet evading review" exception to mootness does not apply in this case. *See Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 249 (4th Cir. 2005) (presuming, in deciding a mootness question, that individuals will abide by the law in the future).
>
> Federal courts are not comprised of philosopher-kings or legislative aides, and the Constitution forbids us from pontificating about abstractions in the law or merely giving advice about the potential legal deficiencies of a law or policy when no ongoing controversy exists with respect to that law or policy.

<u>Incumaa v. Ozmint</u>, 507 F.3d 281, 289 (4th Cir. 2007) (emphasis added) (parallel citations omitted)); <u>see also, e.g.</u>, <u>Spencer v. Kemna</u>, 523 U.S. 1, 17 (1998) (finding capable of repetition, yet evading review exception inapplicable, because prisoner whose underlying sentence had expired challenging his parole revocation had not "demonstrated a reasonable likelihood that he w[ould] once again be paroled and have that parole revoked");[4] <u>Williams v.</u>

---

[4] The United States Supreme Court also rejected the petitioner's argument that the possibility that a court could use the petitioner's parole revocation "to increase his sentence in a future sentencing proceeding" constituted a collateral consequence sufficient to defeat mootness, "because [such an argument] was contingent upon [the petitioner] violating the law, getting caught, and being convicted[,]" and noted that the petitioner "[was] able - and indeed required by
(continued...)

-10-

Ozmint, 716 F.3d 801, 810 (4th Cir. 2013) (rejecting application of capable of repetition, yet evading review exception, because prisoner's "argument that his claim [wa]s capable of repetition rest[ed] either on mere speculation, or on the possibility that he [would] violate prison rules in the future"); Moriello v. Board of Immigr. Appeals, No. 1:22CV969, 2024 WL 1349588, at *7 (M.D.N.C. Mar. 29, 2024) (unpublished) (Biggs, J.) ("[I]t is not reasonable to expect [the p]laintiff to be subject to the same action again. Making such a prediction assumes [the p]laintiff will commit culpable conduct again in the future, which is an assumption the Fourth Circuit consistently has refused to make. . . . As was true in *Incumaa*, [the p]laintiff 'holds the keys' to remaining free from further discipline. *Incumaa*, 507 F.3d at 289. . . . The onus of another suspension is on [the p]laintiff and depends singularly on her future behavior."); Cole v. Jones, No. 5:18CV203, 2018 WL 7436964, at *1 (N.D. Fla. Nov. 27, 2018) (unpublished) (holding that the petitioner did not meet the second "condition[] for the 'capable of repetition, yet evading review' exception to apply, . . . because [the] petitioner cannot demonstrate there is a reasonable expectation (as opposed to mere speculation) that the circumstances for which he was charged will recur and again give rise to discipline, much less that the circumstances rendering his disciplinary proceeding constitutionally infirm will be repeated"),

---

⁴(...continued)
law – to prevent such a possibility from occurring." Spencer, 523 U.S. at 14.

recommendation adopted, 2019 WL 919583 (N.D. Fla. Feb. 25, 2019) (unpublished).

Under the controlling authority of Spencer, Williams, and Incumaa, Petitioner's speculative prediction that he will commit future disciplinary offenses that would subject him to disciplinary proceedings where he would suffer due process violations does not meet the "reasonable expectation" prong of the "capable of repetition, yet evading review" exception to the mootness doctrine. As a result, that challenge to his Petition's mootness fails.

**C. Collateral Consequences**

Petitioner maintains that, "as a result of th[e] disciplinary conviction [he is] now challenging . . ., [he] ha[s] and continue[s] to suffer collateral consequences beyond the restored good time." (Docket Entry 11 at 13 (some commas, internal quotation marks, and hyphen omitted).) In that regard, Petitioner avers that 1) "[he] was demoted from minimum custody security where [he was] eligible for work release (a liberty interest) . . . to [m]edium [c]ustody [security] arbitrarily and capriciously around April 2024," all "without . . . notice" or a "hearing" (id. at 14), 2) "[he] was not allowed to participate in programs such as vocational classes, recreational tournaments, etc., due to requirements of being infraction free for certain periods of time" (id.), 3) "[he] was not allowed to be a religious 'faith helper' for [his] religious community within the [prison] due to the aforementioned infraction free requirements" (id.), and 4) "[he is]

still, to this very day, being denied work release because of th[e] wrongful conviction [at issue in the Petition]" (id.).

"Once [a] convict's sentence has expired, . . . some concrete and continuing injury other than the now-ended incarceration . . . — some 'collateral consequence' of the conviction — must exist if the suit is to be maintained." Spencer, 523 U.S. at 7; see also Carafas v. LaVallee, 391 U.S. 234, 237 (1968) (holding that the petitioner satisfied case-or-controversy requirement of Article III even after release from prison by showing that conviction caused collateral consequences impacting ability to vote, engage in certain businesses, serve as juror, or hold public office). Although courts presume collateral consequences arising from a criminal conviction, see Spencer, 523 U.S. at 12, no such presumption arises in the setting of habeas petitions challenging prison discipline, see Diaz v. Duckworth, 143 F.3d 345, 346 (7th Cir. 1998) (holding that habeas petitioner challenging prison discipline bore burden of proving collateral consequences because "it cannot be said that most prison disciplinary sanctions 'do in fact entail adverse collateral legal consequences'" (quoting Spencer, 523 U.S. at 12). Here, as the following analysis details, Petitioner's asserted "collateral consequences" do not meet Article III's case-or-controversy requirement.

At the outset, the undersigned did not locate a Fourth Circuit decision addressing the applicability of the collateral consequences exception to mootness in the setting of a Section 2254

-13-

petition challenging prison discipline where the prison has restored all lost good time credits at issue.  Other Circuits appear to take differing approaches.  For example, the Ninth Circuit has entertained the notion that the collateral consequences exception could apply to prison discipline cases even where correctional authorities restored all lost good time credits. <u>See</u> <u>Wilson v. Terhune</u>, 319 F.3d 477, 481-82 (9th Cir. 2003) (analyzing whether "the denial of conjugal visits, [the petitioner's] transfer to [another p]rison, and the increase in his classification score" constituted sufficient collateral consequences of prison disciplinary conviction to defeat mootness (and deciding they did not)).  In contrast, the Seventh Circuit has interpreted <u>Spencer</u> as ruling that the collateral consequences exception cannot apply in the prison discipline context where prison authorities restored all lost good time credits.  <u>See</u> <u>Johnson v. Finnan</u>, 252 F. App'x 98, 99 (7th Cir. 2007) ("A federal court hearing a collateral attack under 28 U.S.C. § 2254 reviews *custody* (here, a revocation of good-time credits), and when custody ends (here, by restoration of the credits) the federal proceeding becomes moot.  [The petitioner] contends that he suffers collateral consequences, but that doctrine is inapplicable when the custody stems from prison discipline. *See Spencer v. Kemna*, 523 U.S. 1 (1998)." (emphasis in original) (parallel citations omitted)); <u>but see</u> <u>Cochran v. Buss</u>, 381 F.3d 637, 641 (7th Cir. 2004) (evaluating whether the petitioner's los[s of] his preferred prison living arrangement, his prison job and his eligibility for rehabilitative programs[,] and . . . damage[ to]

-14-

his prison record" constituted "sufficient collateral consequences" to overcome mootness (and holding they did not)).

Another judge of this Court recently ruled that a Section 2254 petition qualified as moot where "[the p]etitioner's good time credits ha[d] been restored, and he ha[d] received the remedy available in th[e Section 2254] proceeding." Rasul, 2023 WL 11833718, at *1. However, that case also noted that, alternatively, "[the petitioner ] present[ed] no continuing collateral consequence or cognizable injury absent the loss of good time credits," id. (citing Cochran, 381 F.3d at 641), thus allowing for the possibility that the collateral consequences exception conceivably could apply in the context of a Section 2254 challenge to prison discipline involving restored good time credits. The undersigned need not resolve the issue of the applicability of the collateral consequences exception because, even assuming the exception applies, Petitioner has not shown that his alleged demotion from minimum custody security and inability to participate in prison programs, serve as a faith helper, and engage in work release qualify as sufficient collateral consequences to defeat Respondent's mootness arguments.

Petitioner asserts that "[he] was demoted from minimum custody security where [he was] eligible for work release (a liberty interest), without due process as [he] never received a notice of demotion[, and he] never had a hearing in th[at] regard as prison staff demoted [him] to [m]edium [c]ustody arbitrarily and capriciously around April 2024." (Docket Entry 11 at 14 (emphasis

-15-

added) (comma omitted).) However, Petitioner has failed to show that this alleged demotion arose <u>because of</u> the disciplinary conviction he challenges in this action. The NCDAC's Offense and Disciplinary Report for the conviction in question reflects that Petitioner received as punishment 30 days in RHDP (<u>see</u> Docket Entry 6-2 at 8), the loss of 40 days of sentence reduction credits (<u>see id.</u>), 50 hours of extra duty (<u>see id.</u>), a 90-day suspension of canteen, visitation, and telephone privileges (<u>see id.</u> at 9), and 60 days of limited withdrawal from his prison trust fund (<u>see id.</u>). Notably, the line "DEMOTE TO:" does not contain <u>any</u> punishment. (<u>See id.</u>) Moreover, Petitioner avers that the demotion occurred in "<u>April 2024</u>" (Docket Entry 11 at 14 (emphasis added) (comma omitted)), whereas his disciplinary conviction and sentencing took place on <u>March 18, 2024</u> (<u>see</u> Docket Entry 6-2 at 8). Simply put, Petitioner has not shown that any alleged demotion to medium custody security constituted a collateral consequence of his disciplinary conviction. <u>See</u> <u>Veal v. Jones</u>, No. CIV-08-350, 2009 WL 365940, at *3 (W.D. Okla. Feb. 12, 2009) (unpublished) ("The existing record does not reflect the reason for the decision at the adjustment review to demote [the petitioner] to level two. . . . [T]he petitioner has failed to prove that the downgraded classification was the product of the disciplinary conviction."). Furthermore, even if Petitioner could connect his alleged custody-level demotion to his disciplinary conviction, courts have held that a prisoner's reclassification does not constitute a sufficient collateral consequence to defeat mootness.

-16-

Case 1:24-cv-00547-LCB-LPA   Document 13   Filed 05/05/25   Page 16 of 20

See Hall v. Kirkegard, No. CV 12-18, 2012 WL 1378104, at *2 (D. Mont. Apr. 19, 2012) (unpublished) ("[A] change in classification is not a sufficient adverse consequence to meet the case-or-controversy requirement."); Lira v. Director of Corr. for State of California, Civ. No. C 03-3772, 2004 WL 1376517, at *2 (N.D. Cal. June 15, 2004) (unpublished) ("Allegations that a [prison] rules violation finding will affect classification[ and] institutional and housing assignments . . . involve discretionary decisions too speculative to constitute sufficient proof of collateral consequences.").

Relatedly, Petitioner maintains that the prison has barred him from participating in "work release because of []his wrongful [disciplinary] conviction." (Docket Entry 11 at 14.) Given that Petitioner averred that his "demot[ion] from minimum custody security . . . to [m]edium [c]ustody [security]" caused his ineligibility for work release (id.), and Petitioner, as discussed above, has failed to connect that alleged demotion to his disciplinary conviction, he similarly cannot establish his ineligibility for work release as a collateral consequence of that conviction, see Hall, 2012 WL 1378104, at *2 ("[The p]etitioner contends that his current classification level disqualifies him from participating in the prison's Criminal Thinking Errors program, which he must complete before he can be eligible for community placement. This argument fails because [the p]etitioner's ineligibility for the Criminal Thinking Errors course is a consequence that flows directly from reclassification, and a

-17-

change in classification is not a sufficient adverse consequence to meet the case-or-controversy requirement.").[5]

Lastly, Petitioner avers that he could not "participate in programs such as vocational classes, recreational tournaments, etc.," or serve as "a religious 'faith helper' for [his] religious community within the [prison]" because of "requirements of being infraction free for certain periods of time." (Docket Entry 11 at 14.)  The loss of such opportunities remains too speculative to qualify as a collateral consequence for three reasons.  First, as Petitioner has not explained how long he must remain infraction-free to participate in those programs (see Docket Entries 1, 11), and more than one year has passed since the disciplinary conviction at issue, he has not shown that the disciplinary conviction still disqualifies him for those programs.  Second, Petitioner has not established the absence, in the year since his disciplinary conviction, of additional disciplinary convictions (or other circumstances) that have rendered him ineligible for such programs.  See Lira, 2004 WL 1376517, at *2 ("Allegations that a [prison] rules violation finding will affect . . . privileges . . . involve discretionary decisions too speculative to constitute sufficient

---

[5] Even if Petitioner could establish that his disciplinary conviction caused his ineligibility for work release, doubt exists that such ineligibility would qualify as a sufficient collateral consequence to defeat mootness.  See Johnson, 252 F. App'x at 99 ("[T]he only collateral consequence that [the petitioner] identifies is a loss of prison wages.  Money differs from custody; indeed, the opportunity to earn wages while in prison is not a form of liberty or property to which the due process clause applies. *See Sandin v. Conner*, 515 U.S. 472 (1995)[.]" (parallel citations omitted)); Cochran, 381 F.3d at 641 ("[The petitioner] alleges in general terms only that he lost . . . his prison job . . . .  Th[at] alleged deprivation[], however, [is] not [a] sufficient collateral consequence[].").

-18-

proof of collateral consequences."). Third, courts have held that ineligibility for prison programs and other such privileges do not involve a sufficient deprivation to constitute collateral consequences to overcome mootness. See Cochran, 381 F.3d at 641 ("[The petitioner] alleges in general terms only that he lost . . . his eligibility for rehabilitative programs . . . . These alleged deprivations, however, are not sufficient collateral consequences. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (stating that not every prison action that adversely affects the prisoner requires due process, such as a transfer to a substantially less agreeable prison and an unfavorable classification for rehabilitative programs)." (parallel citations omitted)); Rhode v. Superintendent, Indiana State Prison, No. 3:09CV239, 2009 WL 4671789, at *2 (N.D. Ind. Dec. 8, 2009) (unpublished) ("That the [prison disciplinary hearing board]'s finding of guilt might affect the [p]etitioner's ability to earn future educational credit time states no claim upon which relief can be granted under § 2254.").

Accordingly, the Court should dismiss the Petition as moot. See, e.g., Prator v. Neven, No. 2:10CV1209, 2013 WL 3297173, at *1 (D. Nev. June 28, 2013) (unpublished) ("Due to the restoration of the 90 days of good time credit, [the] petitioner's claims are moot, and the petition is dismissed with prejudice on this basis."); Holtz, 779 F. Supp. at 113 ("[T]he petitioner has received the remedy he sought in his habeas petition, restoration of the forty-five (45) days of good time credit he lost as a result

-19-

of the defective prison disciplinary hearing . . .[, and t]herefore, his petition is moot." (capitalization omitted)).

### IV. Conclusion

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion to Dismiss (Docket Entry 5) be granted, and that the Petition (Docket Entry 1) be dismissed as moot.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 5, 2025